We will turn to the next case from the same video source, and that is United States of America v. John Vogler. Good morning, counsel. Good morning. May it please the court. My name is Anne Berger. I represent the appellant John Vogler in this appeal. It's my intention to rely on my papers with respect to the substantive reasonableness point in the brief, instead at argument to address the procedural error that we argue occurred at sentencing here. In particular, with respect to the court's application of Guideline 4A1.3 in imposing an upward departure for underrepresentation of criminal history. The question here is whether the district court committed procedural error when it upwardly departed using its own vertical procedure and imposed an 18-month sentence nearly double the high end of the 4-10 months range identified in the pre-sentence report. First, the district court committed error in considering convictions which, under the Guidelines 4A1.2, would ordinarily have been excluded as being minor infractions. Although there were certainly other convictions the district court could have dwelt on and considered, it spent the bulk of its comments with respect to Mr. Vogler's driving record and these minor infractions relating to driving. Secondly, the court committed procedural error when, rather than following the horizontal by criminal history category upward departure process outlined by 4A1.3 of the sentencing guidelines, it created its own process and instead departed vertically by three levels while maintaining Mr. Vogler in criminal history category 5. Say we agree with you. Are we spinning our wheels to send it back to the judge for him to do it horizontally instead of vertically and reach the same sentence, or is there some value in having him do it the right way? It's my contention that there would be value in two different areas. First, there seems to be this persistent error, and perhaps it's a minor error with respect to the court's understanding that Mr. Vogler was convicted of a misdemeanor AUO while on pretrial release. That was a factor that he commented on at sentencing. Despite its being described as a plea to a traffic infraction in the PSR, even when that issue was corrected, it showed up again in the judge's statement of reasons as being a misdemeanor. Again, perhaps this is a minor thing, but that's certainly something that the judge could clarify in terms of whether that being his view that it was a misdemeanor, an incorrect view, made a difference. Well, it's an unlicensed operation while on release and despite pretrial warnings that he couldn't do this. So while you characterize it as minor, to the extent that the person is on pretrial release has been warned against certain conduct and persists in it anyway, I'm not sure we can view it as quite as minor as a matter of law as you're urging. In this context, Judge Raggi, the language, the wordage that I used of minor infractions came from the Martinez-Santos decision, and that was a case that dealt with the interpretation of 4A1.2 excluded offenses and 4A1.3. I'm not suggesting it's murder or even any kind of violent crime. I understand that. But the totality of circumstances here is that your client has 42 prior convictions, including nine felonies for which I think he gets, or six of which he gets no points for in his criminal history, and the district court explained that it was concerned about the seriousness of his criminal conduct, including conduct that persisted while on supervision. You know, going back to your original point, the precedent that requires step-by-step horizontal analysis for increases from the guidelines, even pre-Booker, had been somewhat mitigated by this Court in United States v. Bean in 2008. The Court noted that we had backed away from the mechanistic approach of Tropiano. In Ivey in 2017, we said that what matters is that the reasons for departure are fully explained. I don't think you can say the reasons for the departure are not fully explained. Whether they are sufficient is another question. But I don't think you can say they're not really fully explained in terms of procedural error. Well, and that's why I think if the matter was remanded, and I think if the Court was once again in a position to consider really what should drive— What? I mean, the district court doesn't have to do a step-by-step horizontal analysis as long as it explains its reasons. And that is—obviously, we're not disagreeing with Your Honor's assessment of the fact that it doesn't have to be in lockstep with that precise procedure. But instead, the idea that the Court very clearly was basing its upward departure on factors that were otherwise not worthy or unreliable, I think, is the best way to describe it. Unreliable in what way? Because I didn't think there was any doubt about the facts of what he had done. So unreliable in what way? First, the point with respect to the judge's belief that there had been a conviction for a misdemeanor, and I won't repeat that. Secondly, with respect to the judge's opinion that Mr. Vogler continued to drive. Now, the record, and I reviewed it a second and a third time to prepare for argument today, describes three instances over a period of about two years when Mr. Vogler was driving and shouldn't have been. One, when he was ticketed, charged, and then ultimately convicted with the facilitating an AUO traffic infraction. Two, when on the first instance in 2016, shortly after that, his pretrial officer saw him driving and warned him. He was admonished not to. And three, a final time, I believe, in early 2017. Now, certainly, the district judge could have determined that a non-guideline sentence was warranted because of this misconduct occurring on pretrial release. That's certainly an option available to the judge if the judge makes that determination. But the court went further here and went so far as to argue that there were probably many more instances in which Mr. Vogler had been driving. I think at one point he says something along the lines of, I'll bet you a hundred bucks you're doing this all the time, or something to that effect. If these are indeed factors that the court's considering, and it's based on not the three instances that are in the record that I've described, but this suspicion that although there's no proof, he's been driving all along. I'm having difficulty, and help me understand the transcript. Because when I look at it, I'm not sure that there is such a sole focus on the driving. I agree with you, he says, I bet you've been driving on other occasions. But there were a lot of driving infractions. It does make it more serious that they were occurring on during pretrial release. And the district court begins by noting the offense conduct was not just lying, but the negotiation of 18 separate checks over two or three years. So I was reading the transcript. It's a cold transcript, but the district court is focused on an extended period of criminality for the felony that's before the court then. And then along with that, all these driving infractions, which are occurred even after being warned by pretrial services. Judge Livingston, I'd respond in two ways. First, if we look at the other convictions which certainly the court could have spent time on, burglary thirds, there were two of those. There's an escape. There's a felony DWI, and there are a number of others. There was very little information describing the underlying conduct for many of those convictions, presumably because they were very old. And in some instances, there was no underlying information describing the particulars of what conduct Mr. Vogler had engaged in. So there wasn't much raw material with respect to most of those six prior felony convictions from which the court could have drawn its argument in support of the upward departure. Now, in addition to that, the judge spent almost the entirety of his comments on the driving and then added a separate factor, which was to suggest that specific deterrence needed to be brought to bear against Mr. Vogler with respect to DUI. And that seems on the record inconsistent with Mr. Vogler's last DUI, which had been 30 years prior. So I think that certainly there would have been generic material the court could have relied on, including these other felony convictions, but based on the court's comments, how the court continually returned to the issue of driving again and again, having the matter remanded would be, obviously that's what we're requesting, but it would allow the district court to reconsider whether it wants to put so much weight in these factors that don't warrant the weight. Thank you. Thank you, Counsel. You reserve two minutes for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors. Good morning. My name is Tiffany Lee, and again, as with my colleague, I'd like to thank the court for its accommodation. We thank you for appearing by video. Your Honors, the central inquiry for this case really does boil down to whether or not an 18-month sentence is substantively reasonable. Can we talk about the procedure first? Do you agree that the judge departed horizontally rather than vertically? I agree that the court tried to articulate his moves as a horizontal and a three-step move orally. You know that according to 4A1.3A2A, he should have done it the reverse, correct? Ultimately, the question really with respect to the steps or moves made is not whether or not the court used a rook to make his move to 12 to 18 or played his knight, which still would have put him at 12 to 18 months. Right. The judge has perfect right to sentence where he wants to, but there is a procedure in place that the judge ignored. Isn't that correct? I don't believe that the record is . . . What the record shows is that the court wanted to get to a range within . . . Right. I understand what the court wanted to do, but we have a procedure in place for how you get there, and I'm just asking if you agree that he ignored the procedure that's part of the guidelines, which are nonmandatory, but he ignored that. Isn't that correct? I don't think he ignored it. He may have misapplied . . . Did he refer to it at all? He did. He did talk about it at sentencing. He said, I'm moving horizontally in three levels to get to the range . . . All right, but he didn't say as opposed to vertically, right? He didn't say . . . He didn't say vertically, and then where he ended up on the guidelines, because he ended up finding a criminal history of five, which meant an offense category of seven, so I think he misapplied the moves that he was supposed to make, but at the end of the day, that's not important. What's important . . . Well, this is my question to you. Do you think the government has any responsibility, at least to call to the attention of the judge, this section, 4A1.3A2A, and just point out that he was not complying with the rules from that section? Do you think the government has any obligation to do that? I think the government . . . I'm not sure if it's . . . The guidelines are not supposed to be applied formulaically, especially when it comes to departures, which is what is happening here. This is not a question about whether or not the guidelines were procedurally incorrect when we first started the sentencing analysis. Here, the court tried to use the guideline framework in order to provide justification as to why . . . the reasons why I am going to impose a sentence of 18 months. I believe that the criminal history category of . . . or, excuse me, Mr. Vogler's criminal history is underrepresented. He got to the right place, but he just made the wrong moves, and that's . . . Does the government have an obligation to tell the judge that you made the wrong moves, Your Honor? I guess to what effect, at that point in sentencing, in terms of, Your Honor . . . To what effect? Well, don't we believe in this whole system of rules? I mean, isn't that what we live by? But he is trying to apply the right . . . he's trying to apply the right rules. He just did it in the wrong way. He didn't make the right moves. Right. That's my question. I know. I know exactly what he did. He wanted . . . he had an outcome that he wanted, and he just went there without following the rules that we put in place. Your Honor, the main rules . . . those are not statutory rules. Those are guidelines in order to try and have some uniformity with respect to sentencing. The main rules are the dictates of 3553 being followed. Are you basing the sentence on an individualized consideration of this . . . But we're not talking about the merits of it. I'm not talking about the merits of the sentence, of whether it was substantively reasonable. I'm talking about whether there was procedural error, which in our analysis comes before we have terms of the substance. And do you concede that there was procedural error? No, there was no procedural error. There was no procedural error in terms of how this departure ended up being. And that is because that's on the theory that the district court adequately explained. It provided the reasons for the box it ended up in, whether it went through a mechanistic explanation of each move or not. Exactly. Exactly. Ultimately, the question is, and that is why the central question is the substantive reasonableness. Is there a basis to impose an 18-month sentence? Is this sentence within the range of permissible decisions that the sentencing court could make? It was clearly within that. He based it based on the nature and circumstances of the offense. It wasn't just lying. It was lying about 18 checks that had been converted from his late mother's VA benefits, to which he knew he was not entitled to. It was also based on the nature and circumstances of this particular defendant, who had a history, a lifelong history, of demonstrating that he had no respect for the law. That he had no respect for the rules. That he had no respect for the fact that he had been told time and again, he cannot drive. He had been told time and again, you cannot commit new crimes. And yet he continued to do so. Ultimately, taking all these factors together provides the basis in which was articulated by the district court in sentencing, as to the reasons why this particular defendant deserved a sentence of 18 months. So it really doesn't matter that he may have misspoke or mismoved, but he ultimately got to the range of 12 to 18 months supported by the most important factors for sentencing, and that is a consideration of everything outlined in the statute 3553. What about your adversary's argument that there were also, perhaps minor in some respects, but he also misperceived the record and he apparently is referring to the danger of drunk driving when those are older offenses, and he also is referring to a misdemeanor that is in fact not a misdemeanor in the course of the sentencing. I think in the course of the sentencing though, what we're looking at is we're not looking at the minutiae, but overall who is this person that's standing before him. And for the district court, Mr. Vogler represented an individual, regardless of the minor details of the misdemeanor infraction that occurred while on release, the fact is he did something he was not supposed to, putting him in another court during the time that he was on release. And the fact that in the past, it's not just one DWI in his past, he committed that type of crime five times without regard to public safety or anything along those lines. My concern though is not that that explanation would not get to the ultimate sentence, but that that's not quite how the district court put it, and that it may have misapprehended or mischaracterized parts of the record. And do we just ignore those mischaracterizations, because you've got an ability to point to other ways of looking at the record correctly that would support the sentence, not render it substantively unreasonable? I think the way that he articulated his sentence was basically just acknowledging that this is not an individual who is a one-time or a first-time offender, that he has a lifetime history of committing violations, that he has shown his disrespect for adhering to the law. So it's much more of a distance looking, but there are facts. He had mischaracterized the previous offense as a felony rather than a misdemeanor. Would the same argument pertain? Given this history where there were already six felony violations that were not counted as part of his criminal history, that were outlined in the pre-sentence report, I think the one mischaracterization when you're dealing with a 42 offense record, it's a minor misapprehension, but what it comes down to is, is there a basis to support the sentence? And there is. And this court has always recognized that it has to give due deference to the district court. The question is, are we still off the reservation here with respect to an 18-month sentence? We are not. And that's what it comes down to. The district court did support its sentence. It outlined its reasons why Mr. Vogler, in particular, with the offense he committed, should receive a sentence of 18 months, and that is what indeed he imposed. We have remanded, even in circumstances where the district court could impose the exact same sentence on remand, but because we identified procedural error. And the choice of sentence is, in the first instance, the district court's. So if it sentenced on a misperception of fact that was material, we usually send it back and let the district court decide whether a corrected understanding of the fact would alter its sentencing choice. The answer might be no, but it's the district court's answer, not ours. Isn't that right? It's true, but I would say that this particular sentence was amply justified. It totally meets the requirements under the substantive reasonable analysis that this court has applied. I don't believe that there's such a material misapprehension of the facts that would take this sentence out of the permissible ranges of decisions in which the district court can make. Thank you, counsel. Ms. Berger, you've reserved two minutes for rebuttal. Yes, thank you. Two points. If courts are free to devise their own methods to apply the guidelines, then we have to question where we go next and think about, for example, the career offender guideline, which permits for a one-level horizontal departure downward from criminal history 6 to 5 if the sentencing court determines that 6 overrepresents criminal history. The further we get away from the procedures as provided for in the guidelines, the closer we get to a scenario where courts decide what the sentence is and then make a determination, for example, in the career offender context, to pick the range and then explain, well, you know, I got there this way, even though it's completely inconsistent with the process outlined for the career offender. Secondly, Mr. Vogler is scheduled to be released from the BOP. He's presently at Allenwood Low. He's scheduled to be released on April 9th. If the court is of a mind to remand this, I would respectfully ask that it do so forthwith to enable Mr. Vogler to be resentenced as quickly as possible. May I just ask you, I'm looking at 4A1.34 or 1.A14, which is the upward departure guideline, and it's where a defendant is at Category 6 that the guidelines say that the court should structure the departure by moving incrementally down the sentencing table. In other words, you're at 6, so the only way for you to move is vertically, offense-level points rather than horizontally. It's if you're at less than that that the court is told to determine the departure, not by reference to incremental steps, but by just more generally by looking to the criminal history category applicable to the defendants who closely resemble the defendant. Now, this is just advisory now, not controlling. It's our opinion in Tropiano that talks about the incremental review even when you're at less than 6, but we've departed from Tropiano and Simmons and the other cases I cited to you. How is there error here? Well, I mean, you're no longer bound to do, you're not bound in this instance to do it, and you're not bound by our precedent. Well, I mean, the sentencing guidelines are the starting point in the initial benchmark. But nothing in the guidelines says that you have to do it step by step. And that, you know, when I refer to the career offender scenario in terms of an upward or downward departure, I guess, in that case, if this court is comfortable having a scenario where someone, say, in Mr. Vogler's situation, who's at a 5, or maybe someone else who's at a 3 where the court makes a determination, I'm comfortable with him being a criminal history category 3, but I think his offense level should be higher for underrepresentation. Maybe that's something that this court determines is really not too far afield from Tropiano. Then maybe you have a scenario where a court step by step goes up to 6 and then decides to go down by an offense level but then come down one to criminal history 5. I mean, if that's where we're headed, then obviously that's for this court to determine. But I think that nothing that I've read so far suggests that we're headed in that direction where courts are free to calculate and apply the guidelines as they see fit. And I think that line may be drawn for the government when we're talking about, say, the career offender. So if we're here arguing about a career offender where the judge determined he shouldn't be a 6, it overrepresents, I'm going to put him at a 3. I would imagine at that point that would be a line too far for the government. But I think this can be dealt with with the current state of the law, which, right, does not require that a judge in lax step explain at each increment how to proceed, but instead if a judge is sort of hewing generally to what the guidelines provide in that first guideline step, then that would be upheld where you have judges who are getting further afield as occurred here. . . . . . . .    . . . . . . . . . . . . . . . . . .